IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Thelma Griggs, | ) | C/A No.: 3:11-3246-CMC-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Michael J. Astrue, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

In this employment discrimination case, Thelma Griggs ("Plaintiff") is suing Michael J., Astrue, Commissioner of the Social Security Administration ("Defendant"). Plaintiff alleges a race discrimination claim under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* ("Title VII").

This matter comes before the court on the motion for summary judgment filed by Defendant on August 6, 2012. [Entry #18]. Plaintiff filed a response to the motion on August 23, 2012 [Entry #21], and Defendant filed a reply on September 10, 2012 [Entry #24]. The motion for summary judgment having been fully briefed, it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant the motion.

I.      Factual and Procedural Background

The undersigned views all facts in the light most favorable to Plaintiff. Plaintiff has been employed by the Social Security Administration for 45 years, and has been a Paralegal Specialist in the Office of Disability Adjudication and Review ("ODAR") in Columbia, South Carolina since August of 1995. Plaintiff testified her mother had African-American heritage and her father was Hispanic. Plaintiff initially applied for a position with the federal government and indicated that her race was "black" because "Hispanic" was not an option. [Entry #21-2 at 6]. At some point later, likely between 2005 and 2008, Plaintiff changed her race in paperwork obtained from the regional office. *Id*.

In 2005, attorbey Connie Mallon-Link (white) selected Plaintiff for promotion to a group supervisor. Mallon-Link was Plaintiff's direct supervisor from 2005 until October 2008. Although Plaintiff claims that it was common knowledge around the office that she was Hispanic, her 2009 EEO affidavit indicates that Mallon-Link only knew that she was a black female. [Entry #18-14 at 3].

Plaintiff's responsibilities as a group supervisor include administering leave for the group, assigning work, following up on work assignments, ensuring that the judges' cases are prepared for hearings, decisions are timely issued, and cases are efficiently disposed of. [Entry #18-2 at 15]. Prior to 2008, the Columbia office was divided into three groups that were each assigned to support particular judges. *Id.* at 16–19. Louis Houghtaling was the supervisor for Group A, which was responsible for writing the opinions of Judges Reed, Pope, and Conover. Sophia Pearson was supervisor for Group

2

B, which was responsible for writing for Judges Herin and Christian. Plaintiff was the supervisor for Group C, which was responsible for supporting Judges Morgan, Martin, and Powell. *Id*. In 2008, Mallon-Link restructured the organization so that the three supervisors were responsible for a certain functional area, as well as for their own individual group's work. *Id*. at 19–21. Houghtaling was assigned to distribute the writing assignments, Pearson assigned the cases for workup, and Plaintiff was responsible for managing the master docket. *Id*. The supervisors also retained their general group supervisory responsibilities. *Id*.

Plaintiff's duties included certification of time and attendance records. At some unspecified time in 2008,[1] she observed that a part-time (32 hours/week) employee was receiving overtime credit for hours worked in excess of 32, which Mallon-Link was approving. *Id*. at 26–28. Plaintiff believed that overtime pay was not allowed until an employee passed 40 hours a week. *Id*. Plaintiff sent an e-mail reporting the situation to the Chief Administrative Law Judge and copied Mallon-Link on the email. *Id*. Following her report, the regional office audited the time and attendance records of the Columbia office, and Plaintiff believes that at the "closeout meeting they told [Mallon-Link] that what she had done [with the part-time employee's time sheet] was a fireable offense." *Id*. at 59–60. Plaintiff testified that after the timekeeping report, "everything I did appeared to be wrong. Connie was not happy with me." *Id*. at 29.

---

[1] Plaintiff testified that "it might have been in February," but the date was never clarified. [Entry #18-2 at 28].

**Plaintiff's Leave Requests**

Before becoming a supervisor, Plaintiff would often take leave for four weeks during the summer to be with her grandchildren. *Id.* at 32. When Plaintiff became a supervisor, Mallon-Link informed her that she could not take a month off at a time, so she would typically take off a week and then work four hours per day the following week. *Id.* Pursuant to policy requiring leave requests of five or more days to be submitted well in advance, in March 2008, Plaintiff requested and was conditionally approved to take leave from August 18 through September 4, 2008. [Entry #18-5 at 5].

On Sunday, August 10, 2008, Plaintiff completed forms requesting annual leave for the afternoon of August 11, all day August 12, and four hours for the afternoons of August 13, 14, and 15. *Id.* at 1–4. Plaintiff testified that, as was the custom, she placed the leave requests in Mallon-Link's box and expected that the requests would be approved. [Entry #18-14 at 7–8]. On Tuesday, August 12, Mallon-Link sent Plaintiff an email stating: "Given all that is going on – I wish you had let me know about this leave. We have so much happening with your group." [Entry #18-12 at 1]. Mallon-Link approved the leave requests for August 11–13, although the date of such approval is illegible. [Entry #18-5 at 1–2].

Plaintiff subsequently decided to take the entire day of Wednesday, August 13 off. *Id.* at 2. She submitted a new leave request on August 14, showing 8 hours annual leave for August 13 and noting that it was revised request. *Id.* Mallon-Link signed the request as "approved" on the same day. *Id.* Additionally, Plaintiff worked a half hour longer than

4

planned on August 14 and again submitted a revised leave slip showing that she only needed 3.5 hours leave that day. *Id*. at 3.

By the morning of August 14, Plaintiff's leave requests for August 14 and 15 had not been approved. However, Plaintiff avers that the practice was that it was assumed leave requests were approved unless the supervisor informed an employee to the contrary. [Entry #18-14 at 7–8]

**Meeting on August 15**

In late July 2008, while Mallon-Link was out of the office, Judge Pope expressed to Houghtaling (group A supervisor and supervisor of writing assignments) that he was dissatisfied with an opinion Yoami Walls, a paralegal in Plaintiff's supervisory group, had drafted. [Entry #21-3 at 5]. Walls overheard the conversation and was upset by the criticism, but she prepared a revised order as instructed by Judge Pope. *Id*. On July 25, Houghtaling sent an email to Plaintiff, copying Judge Pope and Chief Judge Reed, indicating that Judge Pope was not happy with the revisions and decided to rewrite it himself. [Entry #21-7 at 5–6]. Plaintiff responded to all indicating that she believed "even the condemned deserve a hearing," but also noted that Walls would pay strict attention to the revisions Judge Pope made and use them as a guide in the future. *Id*. Subsequently, Judge Pope talked to Walls privately about the matter in Walls' office. [Entry #21-7 at 3]. On July 31, Plaintiff sent an email to Mallon-Link and Chief Judge Reed indicating that Judge Pope was "out of line" in conducting a "closed door meeting" without Plaintiff present, as Walls' supervisor. *Id*. Mallon-Link responded that the private meeting between Walls and Judge Pope had been cordial and was not improper. *Id*. at 2. On

5

August 3, Plaintiff replied to the email expressing that such action was not acceptable and that she did not "have the time to address this now since all of us are not present." *Id.*

Mallon-Link scheduled a meeting for August 8 to discuss the matter. She invited Chief Judge Reed, Judge Pope, Walls, Plaintiff, Pearson, Houghtaling, and a union representative to attend. *Id.* at 10–11. In the email, Mallon-Link noted that Plaintiff was out of town, but had indicated the meeting could take place without her. *Id.* Several people had conflicts, including Plaintiff who responded specifically requesting to be present for the meeting. *Id.* On Sunday, August 10, Mallon-Link emailed the group indicating that the meeting would be rescheduled to August 15 and that she would provide a time later in the week. *Id.* at 12. On August 14, Mallon-Link advised the group by email that the meeting would take place at 2:00 p.m. on August 15. *Id.* at 15. An email read-receipt appears to indicate that Plaintiff received the message at 12:49 p.m. on August 15, but Plaintiff testified that she did not receive the email.[2] *Id.*; Entry #18-2 at 47.

The two judges, Walls, and Mallon-Link were in Judge Reed's office on August 15 for the 2:00 meeting and union representative April Lott participated by telephone. [Entry #18-7 at 9]. When Plaintiff did not go to Judge Reed's office for the 2:00 p.m. meeting, Walls indicated that Plaintiff did not plan to attend the meeting. [Entry #18-3 at 9]. Mallon-Link went to Plaintiff's office and told Plaintiff the meeting had started. [Entry #18-2 at 48]. Plaintiff responded that on August 10, she had submitted a leave

---

[2] Plaintiff provides no explanation for failing to read Mallon-Link's email from August 10 or August 14, despite admitting that she read other emails during this time. [Entry #18-2 at 47–48].

6

request for August 15. *Id*. at 49. According to Plaintiff, Mallon-Link repeated that they were having a meeting and left Plaintiff's office. *Id*. Plaintiff completed her leave slip for that day and left the office without attending the meeting. *Id*.

That evening, Mallon-Link emailed Plaintiff, explaining that although she had signed a leave slip for August 18 – September 4, she expected Plaintiff to be in the office the week of August 11 and that many people in the office, "myself included, had no idea where you were." [Entry #18-6 at 16]. Her email also requested that Plaintiff not "drop in and out of the office" while on annual leave and notified Plaintiff that she would not "approv[e] overtime or comp time until we have a chance to sit down and talk about what is going on both with you and in your group." *Id*. When Plaintiff returned from her vacation on September 4, Mallon-Link told Plaintiff that she did not know that Plaintiff had planned to be out of the office August 15, notified her that she was considered AWOL for four hours on August 15, and gave her a reprimand. [Entry #18-2 at 55–56].

II.   Discussion

   A.   Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of

7

materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

B.   Analysis

1.   Disparate Discipline Prima Facie Case

To establish a prima facie case of racial discrimination in the enforcement of employee disciplinary measures under Title VII, a plaintiff must show: (1) that she is a member of a protected class, (2) that the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against her were more severe than those enforced against those other employees. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993).

Although Defendant concedes that Plaintiff is Hispanic, and is therefore a member of a protected class, it argues that Mallon-Link believed Plaintiff to be African-American

and was not aware that she is Hispanic. However, Defendant acknowledges Plaintiff could still maintain a Title VII claim if she were African-American, as Plaintiff would still be a member of a protected class. Furthermore, both the alleged discriminator, Mallon-Link, and the alleged comparator, Carol Buckley, were white. Therefore, on the facts of this case, whether Mallon-Link believed Plaintiff to be African-American or Hispanic is a distinction without a difference. Plaintiff has shown she is a member of a protected class.

Next, Plaintiff must show that the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class. First, Plaintiff argues that she did not engage in any prohibited conduct. [Entry #21 at 15–17]. However, this issue is not before the court, as Plaintiff's complaint contains only a claim for race discrimination under Title VII. Therefore, the sole issue before the court is whether Plaintiff was disciplined for discriminatory reasons and not whether Plaintiff's discipline was appropriate, or even lawful, according to Defendant's policies and procedures. Courts do not sit as "super personnel departments second guessing an employer's perceptions of an employee's qualifications." *Malghan v. Evans*, 118 Fed.Appx. 731 (4th Cir. 2004) (citing *Smith v. University of N. Carolina*, 632 F.2d 316, 346 (4th Cir. 1980)). In fact, "the law does not require an employer to make, in the first instance, employment choices that are wise, rational, or even well-considered, as long as they are nondiscriminatory. *Id*. (citations omitted). Therefore, Plaintiff's arguments are more appropriately addressed in the discussion of pretext, and the undersigned considers them *infra*.

9

Plaintiff argues that the conduct in which she engaged was comparable in seriousness to that of Carol Buckley (white), who refused to attend a meeting with Pearson, Buckley's supervisor, and Mallon-Link. Buckley received a counseling for her refusal, while Plaintiff received a reprimand and was considered AWOL for four hours. Defendant argues that Plaintiff and Buckley are not similarly-situated because Buckley was not a supervisor and Buckley and Plaintiff have different responsibilities and supervisors. Defendant also argues that the meeting Buckley refused to attend only involved her direct supervisors, while the meeting Plaintiff refused to attend also involved two judges and a union representative. Additionally, Defendant notes that Buckley did not leave the office after being confronted about the meeting.

The task falls on Plaintiff to identify a suitable comparator, bearing in mind that "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Bradley v. South Carolina Dept. of Corrections*, C/A No. 3:08-2510-JFA, 2010 WL 883729 (D.S.C. March 5, 2010) (citing *Lightner*, 545 F.3d at 265). Here, there is scant information in the record regarding Buckley's refusal to attend a meeting. There is no evidence regarding what the meeting was about or the circumstances in which Buckley refused to attend. On the record provided, the undersigned cannot conclude that Buckley was similarly-situated to Plaintiff with regard to failing to attend a meeting. Additionally, because there is no evidence in the record that suggests Buckley left work, with or without approved leave, during the time of her meeting, she is not a suitable comparator regarding Plaintiff's

AWOL determination. Therefore, Plaintiff has failed to set forth a suitable comparator for purposes of her prima facie case.

### 2.     Disparate Discipline Pretext Analysis

Plaintiff has failed to set forth a prima facie case because she has not shown that she received greater discipline than a similarly-situated employee. Even if Plaintiff could show a prima facie case, Defendant has met its burden of production by setting forth a legitimate, non-discriminatory reason for her discipline: Plaintiff knowingly and willfully left work when she was scheduled to be in a meeting.

Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination *vel non.*" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reasons, but was pretext for discrimination. *Reeves*, 530 U.S. at 143. Throughout the burden-shifting scheme set forth in *McDonnell Douglas*, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude Defendant intentionally discriminated against her.

To show pretext, Plaintiff offers the testimony of Walls and Judge Emily Howard (African-American), who previously worked as an Attorney Adviser under the

supervision of Mallon-Link.[3] Walls and Howard testified generally that people of color were treated differently by Mallon-Link, the office was racially hostile against minorities, that Mallon-Link overrode Plaintiff's lawful commands to her subordinates, and that Houghtaling was treated more favorably by Mallon-Link. [Entry #21 at 21]. However, Plaintiff cites only to testimony giving general opinions, and fails to provide any specific examples of such conduct. *Id.* Such subjective beliefs are insufficient to defeat summary judgment. *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 134–35 (4th Cir. 2002) (finding that affidavit testimony submitted by three individuals amounted to no more than subjective beliefs, and such evidence was insufficient to create a genuine issue of material fact as to discriminatory conduct on Defendant's behalf).

Additionally, Plaintiff argues that she did not engage in misconduct because she had the right to assume that her leave request was approved. A review of the original leave slip indicates that Plaintiff had requested leave beginning at 11:00 a.m. on August 15. [Entry #18-5 at 4]. However, Plaintiff admits that she was in the office at 11:00 a.m. on August 15, at which time she read at least one of her emails. [Entry #18-2 at 47–48]. Further, Plaintiff was still in the office at 2:00 p.m., the time that the meeting began. Finally, Plaintiff admits that she was completing a revised leave slip at the time that Mallon-Link came to her office and told her that the meeting had started. *Id.* at 49.

---

[3] Plaintiff also submitted an affidavit of Howard, to which Defendant objects. [Entry #25]. However, Plaintiff's response only cites the affidavit for the proposition that Mallon-Link knew Plaintiff was in the office on August 15, but took no efforts to notify Plaintiff of the meeting. [Entry #21 at 7, 15]. As the affidavit provides only Howard's subjective view, it is insufficient proof, particularly in light of the undisputed evidence that Mallon-Link had advised all parties, including Plaintiff, of the time of the meeting by email.

Therefore, Plaintiff's argument that she was entitled to rely on original leave request is unpersuasive, as Plaintiff was indisputably working during the time for which she had requested leave. Additionally, because she admits that she was still completing her revised leave slip at 2:00 p.m. and had not submitted it to Mallon-Link, she cannot assume this revised leave request had been approved. Thus, Plaintiff has failed to show Defendant's reason for disciplining her was pretextual and the undersigned recommends Defendant be granted summary judgment on Plaintiff's disparate discipline claim.

        3.        Disparate Treatment Based on Comp and Overtime

Plaintiff also claims that Mallon-Link discriminated against her based on her race because: (1) she was not allowed to receive comp time or overtime while she was on annual leave; and (2) she was required to account for her overtime and comp time. Although Plaintiff argues that these requirements were not placed on any other employee, she provides no citation to the record in support. [Entry #21 at 18]. Additionally, Defendant submitted an affidavit from Houghtaling (white) in which he averred that he was also required to report the type of work he performed for comp or overtime. [Entry #18-11 at 3].

The record shows that Mallon-Link informed Plaintiff that she would not approve overtime and comp time until Mallon-Link and Plaintiff "had a chance to sit down and talk about what is going on both with [Plaintiff] and in [Plaintiff's] group." [Entry #18-6 at 16]. Therefore, Mallon-Link only required that Plaintiff communicate with her before she approved overtime or comp time, which Plaintiff did not do until she returned from annual leave. Finally, while Plaintiff cites to personnel policy regarding leave, Plaintiff's

13

claim involves the denial of overtime and comp time during leave, as opposed to the denial of leave. Therefore, the undersigned recommends Defendant be granted summary judgment for her claim of disparate treatment regarding her use of comp and overtime.

III.     Conclusion

For the foregoing reasons, the undersigned recommends Defendant's motion for summary judgment [Entry #18] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

January 14, 2013                                         Shiva V. Hodges
Columbia, South Carolina                        United States Magistrate Judge

**The parties are directed to note the important information in the attached**
**"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).