IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| THELMA GRIGGS, ) | C/A No. 3:11-03246-CMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| CAROLYN W. COLVIN, ACTING ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY,[1] ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

Through this action, Plaintiff, Thelma Griggs ("Griggs"), seeks recovery from her employer, Carolyn W. Colvin, Acting Commissioner of Social Security ("Colvin"), for alleged racial/ethnicity discrimination in employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"). Specifically, Griggs alleges that her supervisor, Constance Mallon-Link ("Mallon-Link") discriminated against Griggs by reprimanding her and imposing a four-day suspension for being absent without leave and, subsequently, by restricting Griggs' use of overtime and compensatory time. The matter is before the court on Colvin's motion for summary judgment. Dkt. No. 18.

In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(e), (g), DSC, this matter was referred to United States Magistrate Judge Shiva V. Hodges for pre-trial proceedings and a Report and Recommendation ("Report"). On January 14, 2013, the Magistrate Judge issued a

---

[1] Carolyn W. Colvin is substituted as the Defendant in this action because she became the Acting Commissioner of Social Security on February 14, 2013. As provided in the Social Security Act, "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." 42 U.S.C. § 405(g).

Report recommending that Colvin's motion for summary judgment be granted. Dkt. No. 26. Griggs filed timely objections on January 31, 2013, and Colvin filed a reply to those objections on February 13, 2013. Dkt. Nos. 27, 28.

For reasons explained below, the court adopts the recommendations and rationale of the Report. The court supplements the rationale as to Griggs' *prima facie* case to further explain why Griggs has failed to establish that the challenged adverse actions were motivated by animus against Griggs' race or ethnicity.

## STANDARD

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Magistrate Judge's Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of an objection, the court reviews the Report and Recommendation only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation") (citation omitted).

## DISCUSSION

### I.   Challenged Reprimand

While not so limited, the focus of Griggs' complaint is on allegations that she was subjected to racial discrimination when she was given a reprimand and suspended for four days for being absent

without leave ("AWOL") for part of the afternoon of August 15, 2008, when Griggs failed to attend a scheduled meeting with her immediate supervisor, two administrative law judges, a subordinate, and a union representative. For present purposes, the critical issue is whether the reprimand and suspension were motivated by Grigg's race or ethnicity, not whether they were justified.

Griggs relies on the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to establish a discriminatory motive. As more fully explained in the Report and the parties' memoranda, to establish a *prima facie* case under this framework, Plaintiff must establish: "(1) that she is a member of a protected class, (2) that the prohibited conduct in which she engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against her were more severe that those enforced against those other employees." Report at 26 (citing *Cook v. CSX Transp. Corp.,* 988 F.2d 507, 511 (4th Cir. 1993); *see also* Dkt. No. 21 at 12 (Griggs' memorandum in opposition to summary judgment relying on the same elements).

The Report recommends and the court finds that Griggs has failed to proffer evidence sufficient to satisfy the second step of her *prima facie* case as to the challenged reprimand and related suspension because she has failed to demonstrate sufficient similarity between her situation and offense and that of her only proffered comparator, Carol Buckley.[2] The court writes further here to demonstrate the significant evidence suggesting the seriousness of the offense for which Griggs was disciplined and the corresponding absence of any similar evidence as to Buckley's offense.

---

[2] It is undisputed that Griggs satisfies the first element as her mother is African American and father is Hispanic. Griggs' immediate supervisor, Mallon-Link (Caucasian), the individual who initiated the challenged reprimand and suspension, was aware at least of Griggs' African-American heritage. For purposes of this order, the court assumes without deciding that Mallon-Link was also aware of Griggs' Hispanic heritage. It is also undisputed that Buckley (Caucasian) was an individual outside of Griggs' protected class(es).

3

**Similarities.** The court begins with consideration of the similarities between Griggs and her proffered comparator, Buckley, and the actions for which they were disciplined. Both worked in the same office, subject to the same general policies relating to leave and, presumably, to attendance at meetings. Mallon-Link, who initiated the adverse action against Griggs, and was at least involved in the discipline of Buckley, was Buckley's second-level supervisor and Griggs' immediate supervisor. The discipline imposed against both involved failure to attend a meeting, although Griggs' discipline was expressly for being absent without leave.[3]

**Positions held.** Buckley was a paralegal. Griggs was a supervisor of paralegals. Thus, Griggs held a higher-level position than Buckley, being in the same position as Buckley's first-line supervisor.

**Offense and discipline imposed.** Buckley was counseled, with a notation placed in her file, for failing or refusing to attend a meeting with her immediate supervisor and Mallon-Link. As noted in the report, there is "no evidence regarding what the meeting was about or the circumstances in which Buckley refused to attend the meeting." Dkt. No. 26 at 10 (also noting that, unlike Griggs, Buckley "did not leave the office after being confronted about the meeting").

---

[3] For purposes of this order, the court assumes that Griggs' reprimand and suspension would not have been imposed but for Griggs' failure to attend the meeting held during her absence. This is a necessary threshold to allowing Buckley to serve as a comparator because Buckley's counseling was for failing or refusing to attend a meeting, not for being absent without leave. The conclusion that Griggs was disciplined at least in part for failing to attend a meeting is also supported by Mallon-Link's affidavit. *See* Dkt. No. 27-1 (stating that Mallon-Link would have expected Griggs to advise her between the date the meeting was first set and when it was held "that she was going to be unavailable for the meeting, since she had been so adamant that she be included. . . . This was a very important meeting involving allegations that she made against an Administrative Law Judge which caused a significant disruption in the office. *Based upon this I placed her on AWOL for the rest of her shift*[.]") (emphasis added).

4

Despite the Report's discussion of and reliance on the absence of evidence relating to Buckley's failure or refusal to attend a meeting, Griggs does not direct the court to any further evidence regarding this incident. Instead, Griggs' cites to the discussion in the Report, her prior memorandum in opposition to summary judgment, and a short excerpt from her own deposition.

Rather than being first-hand testimony regarding Buckley's failure to attend a meeting, the cited deposition testimony refers to a paragraph in the unverified complaint:

> Q: Okay. Paragraph 18 talks about Carol Buckley?
> A: Yes.
> Q: That she refused a direct order to meet with Mallon-Link?
> A: That is correct.

Dkt. No. 21-2 at 30 (Griggs dep. at 95). The referenced paragraph of the complaint, reads as follows: "Plaintiff asserts that Carol Buckley, a Caucasian Paralegal Analyst, previously refused a direct order to meet with Mallon-Link regarding a work-related matter, but Mallon-Link did not charge Buckley with AWOL." Dkt. No. 1 ¶ 18. Thus, this excerpt from Griggs' deposition is not a proffer of admissible evidence. Even if it was, it would not provide the sort of detail needed to establish Buckley as a valid comparator.

Griggs' reference to her earlier memorandum in opposition to summary judgment leads to the deposition excerpt quoted above. Dkt. No. 27 at 13 (citing Dkt. No. 21 at 17). Thus, it adds nothing to Griggs' proof.

There is, by contrast, substantial evidence regarding the events leading up to Griggs' reprimand and four-day suspension. The stated basis for the discipline was Griggs' absence without leave for several hours on the afternoon of August 15, 2008. There is conflicting evidence as to

5

whether Griggs might have believed she had the right to take the challenged leave.[4] It is not, however, disputed that Griggs was actually present in the office at the time the meeting started, yet declined to attend the meeting with Mallon-Link, two administrative law judges (Judge Pope and Chief Judge Reed), one of Griggs' subordinates (paralegal Yaomi Walls ("Walls")), and a union representative (April Lott ("Lott")).

The series of events leading up to the meeting began on July 25, 2008, when Judge Pope made negative comments regarding an opinion drafted by Walls. *See* Dkt. No. 21-7 at 5 (email string beginning July 25, 2008). These comments were made to a co-worker of Griggs, fellow supervisor Lewis Houghtaling ("Houghtaling"), and Walls. In an email exchange initiated on July 25, 2008, Houghtaling advised Griggs that Judge Pope had ultimately decided to rewrite the decision himself. Griggs responded that she would ensure Judge Pope's instructions were followed in the future, but also signaled some disagreement with how the matter was handled by beginning her response with the following sentence: "I think that even the condemned deserve a hearing." *Id.* at 5.

On July 31, 2008, a little less than a week later, Walls sent an email to Griggs, Mallon-Link, and Chief Judge Reed, with a copy to Lott, indicating strong feelings about the matter:

> I am returning 2 of Judge Pope's cases to you that were assigned to me to write . . .
>
> In light of the conversations, e-mails and other comments made last Friday by Judge Pope, [Houghtaling, Griggs] and myself, I am requesting that I not be allowed to write any of [Judge Pope's] cases. I am not be [sic] intimidated by him and I will not abide by his snide slanderous remarks. We all are aware of his tirades throughout the office and I will not be subjected to this. Again, I request that I not be given any of his cases

---

[4] Of course, the critical issue for purposes of the *prima facie* case is not whether the employee believed she was in the right, but whether she was treated differently from employees outside her protected class under similar circumstances.

6

to write.

*Id.* at 18-19.

Lott responded to Walls, all addressees of the original email, and copied her email to two other individuals. The bulk of her response is a quotation of a provision of the union contract referring, *inter alia*, to the need to treat all persons with "courtesy, dignity, and respect." Lott concluded: "I hope this matter can be resolved with[out] any further actions." *Id.* at 18. Mallon-Link forwarded Lott's email to Chief Judge Reed with the short notation: "We need to address this[.]" *Id.* (2:51 p.m. email).

Less than an hour later, Mallon-Link sent an email to Griggs, Chief Judge Reed, Judge Pope, and Walls, with a copy to Lott, stating: "OK, I obviously do not know all the ins and outs of what was discussed on Friday. I want to investigate it and hear what everyone has to say. [Walls] should be there also." *Id.* at 20. Mallon-Link's email suggested those involved meet the following week. She also stated that she "fully agree[d] that civility should be a minimum expectation[,]" but noted that "all assigned work will remain with the assigned employee." *Id.* at 20.

Griggs first responded to all recipients of Mallon-Link's email that same day at 4:27 p.m., stating: "I will not be in the office next week. I will be in Falls [C]hurch." *Id.* at 21. At 4:42 p.m., Griggs sent a second email to just Mallon-Link and Chief Judge Reed, expressing her concerns regarding Judge Pope's continuing actions. She began by stating: "There appears to be a difference in the way we are doing business." She then noted that Judge Pope held a "closed door meeting" with Walls "this afternoon," without first advising her as Walls' supervisor. *Id.* at 22. Griggs also expressed concern that Judge Pope had "voiced his perception of the status of [Houghtaling] and myself." *Id.* She concluded that Judge Pope's "interpretation and discussion of management was

7

I feel out of line." *Id.*

At 5:23 p.m., Mallon-Link responded to Griggs, with a copy to Chief Judge Reed, stating that she had communicated with Judge Pope who described his meeting with Walls as cordial and explained he wanted to "hear [Walls'] concerns directly, without information going through a number of people." *Id.* at 2. Judge Pope stated that his comments about management related only to Houghtaling, not Griggs. After discussing various details of her communication with Judge Pope, Mallon-Link concluded:

> This has gotten blown out of proportion. Judge Pope should be allowed to discuss the issue with [Walls]. . . . He was not giving her directions or telling her what to do, he was just trying to clarify his point. Certainly if [Walls] feels differently about this, I want her to let me know or, at least to be sure to bring it up next week in the meeting.

*Id.* at 2.

On Sunday, August 3, 2008, at 7:29 p.m., Griggs responded to Mallon-Link, with a copy to Chief Judge Reed, as follows:

> I don't have the time to address this now since all of us are not present. I am certain that you and [Chief Judge Reed] were recipients of [Houghtaling's] e-mail on others not even answering a simple question for his group without going through him. I discussed this with you and apparently Judge Pope was able [to] change your mind on this matter and it is now acceptable. It's not.

*Id.* at 2.

On Thursday, August 7, 2008, Mallon-Link advised Griggs and others involved that a meeting to address the issue was set for the next day at 9:00 a.m. *Id.* at 9. Mallon-Link stated: "The purpose of the meeting is to have all parties go over the events of last week concerning the decision written for Judge Pope." She also indicated she was aware Griggs "will not be available, but she has indicated that it would be ok if we all met." *Id.* Various individuals indicated they were not available

8

the following day, and a decision was made by mid-day to reschedule. *Id.* at 8.

The following day (August 8), despite being included on the prior email string, Griggs sent an email to Mallon-Link, Lott, and a fellow supervisor stating: "I had no knowledge of this formal meeting. *I would like to be present.*" *Id.* at 10. Two days later, on Sunday, August 10, 2008, Mallon-Link sent an email to various individuals including Griggs stating the meeting would be held on Friday, August 15, 2008. *Id.* at 12 (3:42 p.m. email). Mallon-Link stated she would provide a definite time as soon as she had contacted everyone. *Id.* Shortly after noon on Thursday, August 14, 2008, Mallon-Link advised all by email that the meeting would be held at 2:00 p.m. in Chief Judge Reed's office. *Id.* at 15. This email, like all others, included Griggs as an addressee. Griggs contends she did not read the email prior to the meeting, although she was in the office off-and-on during the intervening days.

The circumstances summarized above suggest the meeting in question was of more than usual significance. Unlike the meeting which Buckley refused to attend, this meeting included two administrative law judges, one of whom was the Chief Judge, Griggs' subordinate, and a union representative. The meeting followed a series of emails which included emails from Griggs stating strong feelings about the matter, questioning one of the administrative law judge's actions and her supervisor's and the Chief Judge's acquiescence in those actions, and indicating she did not want the meeting to be conducted without her being present. She had, moreover, objected to the administrative law judges or others meeting with her subordinates (one of whom would be in the meeting) at any time without her being present.

No evidence has been offered to suggest the meeting Buckley missed or the surrounding circumstances were in any way similar. Griggs has, therefore, failed to present sufficient evidence

9

to support treating Buckley as a valid comparator to the extent Griggs was disciplined for failing to attend the August 15, 2008 meeting. To the extent Griggs was disciplined for being absent without leave, Buckley cannot serve as a valid comparator because there are no facts suggesting she was charged with such an offense, left the office during the meeting which she failed to attend, or was otherwise absent from the office, much less under circumstances similar to those surrounding Griggs' conduct.

In sum, regardless of the characterization of the basis for Griggs' reprimand and suspension (as for failing to attend a meeting or for being absent without leave), she has not presented evidence sufficient to support the second element of her *prima facie* case. She also fails to present sufficient evidence to raise a genuine issue of material fact as to pretext for reasons addressed in the Report.

**"Direct" evidence of discrimination.** Griggs argues that the recommendation in the Report is in error because she has presented other evidence of discrimination though the testimony of Walls and Judge Emily Howard ("Judge Howard").[5]   Dkt. No. 27 at 19. Griggs states that these individuals, both African-American, "had direct experiences with [Mallon-Link] which evidence her discriminatory treatment towards members of a protected class." *Id.* This argument suggests reliance on a direct theory of proof rather than reliance on the burden-shifting framework. Regardless of the theory of proof, the evidence is inadequate because the proffered testimony is either too generic or too remote from the discipline at issue in this action to support any inference that the discipline at issue in this action was racially or ethnically motivated.

---

[5] In August 2008, Howard served as an attorney and Walls as a paralegal in the same office as Griggs. At some later point, Howard became an administrative law judge.

For example, Griggs attaches and relies on an excerpt from Judge Howard's deposition in which Judge Howard indicates some agreement when asked whether she felt the "office was very hostile toward African-Americans [and other] minorities." Judge Howard responded:

> I would say that once Mr. McSwain came into the office, the hostile type work environment be[gan] to change for the better, however, you know, racial discrimination based on, you know, other things that happened to me and I can, you know, attest to what happened to me. Racial discrimination continued.

Dkt. No. 27-2 at 2 (Howard dep. at 45, attached to objections). The preceding pages of Judge Howard's deposition (filed with Griggs' memorandum in opposition to summary judgment), refer to a directive that Judge Howard, when working as the "only African-American attorney in the whole entire office," was asked to move from an office located near the administrative law judges' offices. Dkt. No. 21-4 at 9-10 (Howard dep. at 41-42). Judge Howard believed that the reason given for requiring her to move (apparently that the office was reserved for administrative law judges) was false, and the real reason discriminatory, in part because the office was later used by a Caucasian paralegal. *Id.* at 10. Judge Howard also testified that she believed Caucasians were preferred for promotion over African-Americans, in part because an African-American employee told Judge Howard that she was turned down for a promotion by Mallon-Link or Chief Judge Reed and one or both of these individuals told the employee "you make enough money as it is," which the employee took to mean she made "enough *for a black woman.*" *Id.* at 11 (Howard dep. at 43 (emphasis added).[6]

Griggs also relies on testimony from Walls who testified that Mallon-Link "didn't like [Griggs]." Dkt. No. 27-3 at 2 (Walls dep. at 42). Walls further explained that "it was common

---

[6] The deposition excerpt is confusing as to whether the employee stated Mallon-Link or Chief Judge Reed made the statement. It is clear, however, that the reported statement is hearsay.

knowledge" that if Griggs gave an employee "an assignment and [the employee] didn't want to do it, . . and told [Mallon-Link], she would have it changed." *Id*. She also stated "there was a rumor around the office that it wasn't going to be long before Ms. Griggs was going to be gone. So we all thought, okay, she's going to retire, she's going to force her out, but that didn't happen." *Id.* at 3 (Walls dep. at 43).[7] Asked if there was "a concerted effort [by] Mallon-Link to force [Griggs] out of her job, Walls repeated her understanding that employees could get out of work assigned by Griggs if they complained to Mallon-Link: "[I]f you didn't want to do it, if you told [Mallon-Link] [Griggs] was harassing you and making you do something stressing you out then you didn't have to do it. That was common knowledge in the office." Dkt. No. 27-3 at 3-4 (Walls dep. 43-44) (also answering "yes" to question whether Mallon-Link "specifically overrode . . . management decisions that Ms. Griggs was making in the office.").

Griggs also relies on an excerpt from her own deposition in which she states that Judge Pope's motivation (apparently for speaking to Walls) was that "Judge Pope didn't like me, and that might have been one of the times when I had probably asked him about something. So this was retaliation." Dkt. No. 27-4 at 2 (Griggs dep. at 124). Asked why Judge Pope didn't like her, Griggs replied: "He didn't like me because of my race." Griggs does not provide any further basis for her opinion as to Judge Pope's motivation.

The cited testimony of Howard, Walls and Griggs is insufficient to constitute direct evidence of discrimination with respect to the claims asserted in this action for a variety of reasons. Most of the cited evidence consists only of the witnesses' subjective conclusion as to events unrelated to the

---

[7] The first "she" in the last sentence appears to refer to Griggs, and the second to Mallon-Link.

12

discipline at issue in this action. The only testimony specific to Mallon-Link's treatment of Griggs is Walls' testimony that Mallon-Link undermined Griggs' authority. Nothing in this testimony suggests that Mallon-Link's actions were racially or ethnically motivated. The foundation for this testimony is also inadequate given Walls' reliance on "common knowledge" and "rumor" rather than first-hand knowledge.[8]

## II.     Challenged Limitations on Use of Compensatory Time or Overtime

Griggs also objects to the recommendation that summary judgment be granted as to her claim for discriminatory treatment with respect to use of compensatory time and overtime. The primary basis for the alleged restriction on use of compensatory time and overtime appears to be an email Mallon-Link sent Griggs after Griggs failed to attend the August 15, 2008 meeting. This email suggests frustration with Griggs' use of leave, compensatory time and overtime, and failure to complete certain assigned tasks. It concludes by asking Griggs not to "drop in and out of the office over the next few weeks," and advises her that Mallon-Link will not approve "overtime or comp time *until we have had a chance to sit down and talk about what is going on both with you and in your group*." Dkt. No. 21-7 at 17 (emailed sent August 15, 2008 at 7:39 p.m.) (emphasis added).

As noted in the Report, Griggs failed to produce evidence that any employee outside her protected class was treated more favorably than she with respect to overtime or compensatory time either generally or as specifically reflected in this email. Given the concerns expressed in the email and as supported by the evidence, Griggs would need to show not only that someone outside the protected class was treated differently, but that the treatment was under similar circumstances. In this

---

[8] While not the basis for this conclusion, the court notes that Walls only began reporting to Griggs a few months prior to the incident at issue.

13

regard, the relevant circumstances include Griggs' somewhat erratic use of leave during the week of August 15, 2008, which, at the least, caused uncertainty regarding when she would be in the office. Moreover, the restrictions referenced in the email were for a limited period ("the next few weeks") during which time Griggs planned to be on leave and until she and Mallon-Link could meet to discuss concerns regarding irregular work hours and use of leave.

Griggs also argues that she was, for some unspecified period of time, required to report how she used compensatory time on a daily basis, while other employees were required to submit only weekly reports. Assuming without deciding that there is evidence of such disparate treatment, Griggs' claim still fails because she has failed to proffer evidence that any difference in treatment was *under similar circumstances* or based on a discriminatory motive.

## CONCLUSION

For the reasons set forth above and in the Report, the court concludes that Griggs has failed to present evidence sufficient to establish a *prima facie* case of discrimination or to demonstrate pretext. Defendant's motion for summary judgment is, therefore, granted in full.

IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
March 13, 2013